Wilmer J. Harris, SBN 150407
wharris@sshhzlaw.com
**SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES LLP**
715 Fremont Ave., Suite A
South Pasadena, CA. 91030
Telephone No.: (626) 441-4129
Facsimile No.: (626) 283-5770

Attorneys for Relator Randy Jacobs
[Additional Counsel on following page]

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. RANDY JACOBS and STATE OF CALIFORNIA ex rel. RANDY JACOBS,<br><br>            Relator,<br><br>      v.<br><br>PACIFIC DERMATOLOGY INSTITUTE, INC., BRADLEY MUDGE, RICHARD ROTAN, and JEFFREY BOTTOMLEY,<br><br>            Defendants. | Case No.: 5:20-cv-01906-JGB-SHK<br><br>**RELATOR'S REQUEST TO REOPEN CASE AND TERMINATE STAY**<br><br>District Judge: Hon. Jesus G. Bernal<br>Date of Hearing: March 18, 2024<br>Time: 9:00 AM<br>Courtroom 1<br><br>First Amended Complaint Filed: September 7, 2023<br>Trial Date:    February 25, 2025 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mike Bothwell, (*Pro Hac Vice*)
Mike@whistleblowerlaw.com
**BOTHWELL LAW GROUP, P.C.**
304 Macy Drive
Roswell, GA 30076
Telephone No.: (770) 643-1606
Facsimile No.: (770) 643-1442

Attorney for Relator Randy Jacobs

**PLEASE TAKE NOTICE THAT** on Monday, March 18, 2024, at 9:00am, or as soon thereafter as the matter may be heard, in Courtroom 1 of United States District Judge Jesus G. Bernal, located at 3470 12th Street, Riverside, California 92501, Relator Randy Jacobs ("Relator") will move, and hereby does move to reopen this case and terminate the stay entered by the Court (ECF 147).

The grounds for this Motion are that Relator was denied the opportunity to respond to Defendants' *ex parte* application to stay the case (ECF 143-1). Defendants sought to seal the *ex parte* application and accompanying declaration and so attached the application to an application for leave to file under seal (ECF 142 (application for leave to file under seal), ECF 143 (supporting declaration), ECF 143-1 (*ex parte* application submitted as document to be sealed). Relator was waiting for the application for leave to file under seal to be ruled upon and for Defendants to file the *ex parte* application to stay the case prior to filing his opposition, relying on the Local Rules regarding the seal process. *See* L.R. 79-5.2.2. However, the Court granted the stay instead of ruling on the application for leave to file under seal, and so the Court was unable to consider Relator's points on the topic.

The Court should reconsider its grant of Defendants' stay request because (1) Defendants misrepresent the stay and their reasons for requesting the stay; (2) Defendants and the Government are not engaged in settlement negotiations, and the Government has recently reiterated that it wishes the parties to litigate and settle amongst themselves; (3) Defendants do not meet the requirements for an *ex parte* motion and (4) Defendants do not meet the requirements for a stay.

This Motion is based on this Notice of Motion and Motion, the below memorandum of points and authorities, all pleadings and files in this matter, all matters of which this Court may take judicial notice, and any further oral or documentary evidence as may be presented to this Court at or prior to the hearing on this Motion. This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 14, 2023.

## **TABLE OF CONTENTS**

**I.   RELATOR DID NOT HAVE AN OPPORTUNITY TO OPPOSE DEFENDANTS' REQUEST FOR A STAY ON THE MERITS** ........................ 2

**II.   DOJ IS NOT INVESTIGATING OR CONSIDERING SETTLEMENT NEGOTIATIONS** ................................................................................ 3

**III.  DEFENDANTS SHOULD NOT BE PERMITTED TO FURTHER PUT OFF GOOD FAITH PARTICIPATION IN DISCOVERY** .................................. 5

**IV.  DEFENDANTS ARE DELAYING BECAUSE THEY ARE LOSING AND RELATOR SHOULD BE ALLOWED TO PROVE HIS CASE WITHOUT FURTHER DELAY** ................................................................................ 7

**V.   DEFENDANTS DO NOT MEET THE REQUIREMENTS FOR AN *EX PARTE* MOTION** ................................................................................ 8

**VI.  DEFENDANTS DO NOT MEET THE REQUIREMENTS FOR A STAY** 11

   A.   Further Delay Would Prejudice Relator ............................................. 12

   B.   Defendants Fail to Make Out a Case of Hardship or Inequity .......... 13

   C.   Orderly Course of Justice Requires Proceeding with Discovery ..... 14

**VII. THE COURT SHOULD DISREGARD DEFENDANTS' IMPROPER REFERENCES TO CONFIDENTIAL MEDIATION COMMUNICATIONS** 14

**VIII. CONCLUSION** ........................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*,
    490 F.3d 718 (9th Cir. 2007) ........................................................ 12

*Castaneda v. United States*,
    2008 U.S. Dist. LEXIS 40567, at *4 (C.D. Cal. May 20, 2008) ............... 13

*Consumer Fin. Prot. Bureau v. D & D Mktg., Inc.*,
    2017 U.S. Dist. LEXIS 221039 (C.D. Cal. Mar. 21, 2017) ...................... 13

*Dietrich v. Boeing Co.*,
    14 F.4th 1089, 1095-96 (9th Cir. 2021) ........................................10

*Folb v. Motion Picture Indus. Pension & Health Plans*,
    16 F. Supp. 2d 1164 (C.D. Cal. 1998) ........................................... 14

*In re Glob. Equity Mgmt. (SA) Pty. Ltd.*,
    No. C 17-02177 WHA, 2020 U.S. Dist. LEXIS 148130 (N.D. Cal. Aug. 15, 2020) ......................................................................... 15

*In re Pandora Media, L.L.C. Copyright Litig.*,
    2023 U.S. Dist. LEXIS 54078 (C.D. Cal. Jan. 31, 2023) ........................ 12

*Ironhawk Techs. v. Dropbox, Inc.*,
    2019 U.S. Dist. LEXIS 239445 (C.D. Cal. Mar. 20, 2019) ...................... 14

*Johnson v. Starbucks Corp.*,
    2020 U.S. Dist. LEXIS 74695 (E.D. Cal. Apr. 27, 2020) ........................ 12

*Karubian v. Kaiser Ventures, L.L.C.*,
    2018 U.S. Dist. LEXIS 235252 (C.D. Cal. Oct. 17, 2018) ...................... 15

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ................................................................. 11

*Lincoln Gen. Ins. Co. v. Ryan Mercaldo LLP*,
    2015 U.S. Dist. LEXIS 191792 ................................................... 12

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ........................................................ 11,13,14

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................... 11

*Sampson v. Murray*,
    415 U.S. 61 (1974) ...................................................................... 13

*U.S. ex rel. Polansky v. Exec. Health Res., Inc.*,
    143 S. Ct. 1720 (2023) ...................................................... 4, 5, 13

*Zuehlsdorf v. FCA US L.L.C.*,
    2023 U.S. Dist. LEXIS 190392 (C.D. Cal. Sept. 26, 2023) ........................ 8

**Rules**

C.D. Cal. L.R. 16-15.8 (a) ...................................................... 15

C.D. Cal. L.R. 79-5.2.2............................................................1, 3

Fed. R. Civ. P. 1 .................................................................10

Fed. R. Evid. 408 ............................................................... 14

ii

## **RELATOR'S REQUEST TO REOPEN CASE AND TERMINATE STAY**

Relator Randy Jacobs respectfully requests that the Court reconsider its grant of Defendants' request for a stay, ECF 147, terminate the stay, and move the case back to its active docket. Relator believes that through the unusual process of asking to have the motion sealed, the Court accidentally ruled on the motion without allowing Relator a chance to respond. The Court might have also been misled as to the nature of the "consent," as there was no consent to this motion. Finally, the entire premise for the motion to stay was based on a mistake of fact and there is actually no basis for the motion or the Court's Order. In fact, Defendants' application distorts the facts regarding the Government's position on the case—suggesting that they are re-investigating or considering intervention to participate in settlement discussions, which they are not—omits critical context regarding Defendants' failure to participate in discovery and lacks sound legal basis. The Court should hear from both sides on the merits of the issue.

At the time the Court entered its Order granting Defendants' request for a stay, Relator had not filed his opposition on the merits to Defendants' opposed *ex parte* application for a stay, because Relator understood Defendants to have filed an *ex parte* application to file under seal, and the document requesting a stay, ECF 143.1, to be an exemplar document required by the rules—not as an effectively filed motion.[1] As a result, Relator did not file his opposition brief before the Court's order, and the Court had before it only a one-sided view of the issues and status of this case. The misleading way in which Defendants styled the *ex parte* application for a stay as "unopposed"—suggesting that its application is "unopposed" because the Government, a non-party in this intervened FCA case, did not take a position on it—

---

[1] Relator notes the docket text of the Order grants ECF 142, which is the Application for Leave to File Under Seal. *See* ECF 147 Docket Text. This, combined with the rules and requirements of C.D. Cal. L.R. 79-5.2.2, lead Relator to believe it is possible the grant of the stay was clerical error, and that the intended application to be granted was indeed the Application for Leave to File Under Seal.

may further have misled the Court.

Defendants have requested—and received—two sizable stay requests from Relator (125 days), which resulted in delayed discovery and no progress on settlement. The most recent stay expired not long ago, on January 8, 2024. Following that stay, the Magistrate Judge granted Relator's Motion to Compel full responses to the very first discovery requests that Relator served in *October 2022*. ECF 140. Almost immediately after losing the motion to compel responses to Relator's first discovery, Defendants moved the Court for yet another ineffective stay to essentially have this Court stay the Magistrate Judge's Compel Order and allow Defendants to fail to fully respond to the first set of discovery 16 months after it was served.[2] The case will be resolved by moving discovery forward—not by allowing Defendants to dodge the discovery process and drag the case out further. The history of ineffective stays of this case speaks volumes for why this stay should be undone. Relator respectfully asks that the Court consider his arguments in opposition to Defendants' request for a stay, terminate the stay, and administratively reopen the case.

## I.   Relator Did Not Have an Opportunity to Oppose Defendants' Request for a Stay on the Merits

Because Defendants framed their *ex parte* request for a stay as an application to file their request for a stay under seal, and the Court had not granted that application, Relator understood the *ex parte* application to not yet be a "live" issue before the Court. *See* ECF 142 (styled as Application for Leave to File Under Seal); ECF 143 (styled as Declaration of Matthew Donald Umhofer in Support of Defendants' Application for Leave to File Under Seal). This understanding was based

---

[2] Relator had to engage in several good faith exchanges, hearings, and filed pleadings waiting essentially 16 months to try to get responses to the first set of discovery. To highlight Defendant's clear intent to continue to avoid this discovery and the Compel Order, Relator points to the fact that the parties initially submitted a motion to extend the deadlines by six months (ECF 139), the Court entered the Compel Order (ECF 140), and then, in a 180 from ECF 139 filed only days earlier, Defendants filed the Ex Parte Motion to file a Motion to Stay under seal (ECF 143).

on the Local Rules, which provide "no document may be filed under seal without prior approval by the Court…Once the Court has granted leave to file a document under seal, the Filing Party must thereafter file the document with whatever motion or other document the under-seal filing is intended to support. The Clerk will not convert the PROPOSED sealed document submitted with the Application into a new filing." *See* C.D. Cal. L.R. 79-5.2.2.

Therefore, based on the provisions of L.R. 79-5.2.2 and Defendants' apparent attempts to follow the rule by, *inter alia*, filing a declaration supporting the application for leave to seal along with a copy of the documents to be sealed (including the *ex parte* application for stay), Relator believed Defendants were following the process set out by the Local Rules and waiting for the Court's grant of permission before filing the *ex parte* application for stay. *See* ECF 142, ECF 143, ECF 143-1, ECF 143-2. Relator noted this understanding in his opposition to the Application to File Under Seal. *See* ECF 146, at 5 n.4 ("Defendants did not file the ex parte application [February 9, 2024], instead opting to file this Application to file under seal.").

As noted in the *ex parte* application submitted for sealing, Relator opposed the *ex parte* application to stay the case. *See* ECF 143-1, at 3. In fact, he was writing his Opposition to *ex parte* application for stay before Defendants even filed their application for leave to file under seal and was waiting to file it as soon as the *ex parte* application for stay was properly before the Court. *See* ECF 146, at 4 ("Relator was starting the process of responding to the *ex parte* application for stay at the time this unexpected Application was filed."); Bothwell Decl., at ¶ 8. Regardless of whether the grant of the *ex parte* application to stay was a clerical error or intentional, Relator believes it is important for the Court to consider Relator's arguments in opposition.

## II.    DOJ Is Not Investigating or Considering Settlement Negotiations

Defendants' entire *ex parte* application for stay, even the title,[3] is misleading,

---

[3] Defendants titled the *ex parte* application as "unopposed" despite Relator's stated opposition. *See* ECF 143-1. If the Court missed the brief references to Relator's

and mischaracterizes important facts. The DOJ's supposed non-opposition is itself misleading. Mr. Ross Cuff, the U.S. Attorney on this case, was not stating, as a party might, that the DOJ did not oppose the application. Mr. Cuff merely informed Defendants, after being approached *twice* on the issue (*see* ECF 143-1, at 6) that the DOJ took no position on the motion, as it is DOJ's policy to minimize involvement in non-intervened cases so as not to "upset the apple cart." Bothwell Decl., at ¶¶ 6-7 *see also* Bothwell Decl., at ¶ 19 (describing Feb. 16, 2014 letter from Mr. Cuff to the parties reiterating DOJ's position that the parties were to litigate and negotiate any potential settlement—not DOJ). Indeed, the Supreme Court recently clarified that the DOJ is not a party and cannot participate in this matter until they go through the formal requirements for intervention (this applies not only to opposing or not opposing motions, but also to *settlement* discussion). *U.S. ex rel. Polansky v. Exec. Health Res., Inc.*, 143 S. Ct. 1720, 1730 (2023) ("When the Government has chosen not to intervene in a *qui tam* suit, it is (by definition) not a party....And non-parties typically cannot do much of anything in a lawsuit."). Even if their "nonopposition" was as Defendants characterize, it would be completely irrelevant.

Even worse, Defendants misled the Court on the status of these supposed settlement negotiations. In discussions with Relator's counsel on February 9, 2024 (the same day Defendants' filed their *ex parte* motion to file under seal), Mr. Cuff, the Department of Justice attorney assigned to this case, directly contradicted Defendants' characterizations of what the DOJ told Defendants, has confirmed the DOJ is not in settlement negotiations with Defendants and has no plan to settle with Defendants despite Defendants' repeated approaches to the DOJ ever since the mediation conference last year.[4] *See* Bothwell Decl., at ¶¶ 6-7; id. at ¶19 (confirming

---

position in the *ex parte* brief and declaration this could mislead the Court into believing the stay was unopposed.

[4] These approaches have been misplaced as the Supreme Court clarified that the DOJ does not have the right to dismiss a case until it meets the requirements for later

this in writing). Despite Defendants' statements that they are in settlement discussions with the DOJ, this is simply not true. In fact, Mr. Cuff told Relator's counsel that their preference is for Relator's counsel to handle settlement negotiations, and that they had no issue with how Relator's counsel has handled those negotiations thus far. *Id.*

## III.   Defendants Should Not Be Permitted to Further Put Off Good Faith Participation in Discovery

Throughout this case, Defendants have dragged their feet and sought delay to avoid any obligation to participate in discovery. The impetus for their present request for an opposed stay of the case is Magistrate Judge Kewalramani's February 1, 2024 Order granting Realtor's Motion to Compel in connection with Relator's first discovery requests served in October 2022, ECF 140—the consequences of which Defendants seek to avoid. That Order stemmed from Defendants' dilatory responses to Relator's first discovery requests to Defendants PD and Mudge. Defendants expressed a belief in letters and conferences exchanged between the parties that they were not subject to any deadlines and did not even provide objections until just before a hearing before the Magistrate Judge on the issue. *See* ECF 140, at 2.

But Defendants did not consider themselves bound even to the objections untimely asserted in their February 15, 2023 responses. During a March 23, 2023 meet and confer, Defendants took the position that the scope of discovery was limited to 2017 and after, and refused to produce documents from 2016 and before. *See* ECF 89, at 3. The parties appeared before the Magistrate Judge on April 6, 2023 on the issue, and Defendants asked to brief the issue, representing that they had caselaw supporting their position—only to withdraw their pre-2017 objection two days before the parties' briefing was due. *Id.* Fed up and fearing similar gamesmanship in the future regarding these bad faith post-hoc objections, Relator requested a ruling from the Magistrate Judge that Defendants had waived their objections to his first discovery

---

intervention. *Polansky*, 143 S. Ct. at 1732 ("Once the Government becomes a party… it acquires the right to dismiss.").

requests. *See* ECF 89, at 6-8. In discovery, meanwhile, Defendants asserted additional objections, taking the position that they would not obtain, review, or produce any medical records from before 2017, or any ESI from before 2014. ECF 100, at 3-4.

Around that time, the parties agreed to a 50-day moratorium on seeking resolution of discovery disputes before the Magistrate Judge, to explore settlement, and the Court granted an extension on dates and deadlines. ECF 90. On July 13, 2023, the parties began mediation with Retired Magistrate Judge Suzanne Segal, which was not successful. *See* ECF 139. Defendants continued to be obstinate about routine discovery—answering another set of discovery with nothing but boilerplate statements and responses which merely stated they would not be responding to the discovery. Bothwell Decl. at ¶ 9; *see also* ECF 140, at 5-6 (also dismissing Defendants' objections as boilerplate).

At the start of the good faith conference between the parties concerning this virtually non-answered discovery, Defendants proposed an additional stay, which the supposed goal of allowing the parties to work towards settlement. *Id.* at ¶ 10. Negotiations continued, and on October 25, 2023, the parties again sought a temporary stay of 75 days to further explore settlement, which the Court granted. ECF 130 & 131. The parties were unable to agree on a settlement despite Relator's counsel's best efforts throughout the stay period and the Holiday season. Bothwell Decl. at ¶¶ 10-11. The stay expired on January 8, 2024. *See* ECF 131. Since then, Defendants have refused to discuss their failure to provide substantive responses to Relator's last discovery requests and have even reneged on some of their previous discovery compromises. Bothwell Decl. at ¶ 12.

Shortly after the stay ended, Judge Kewalramani ruled on Relator's motion to compel, holding that Defendants PD and Dr. Mudge waived their objections to Relator's first requests for production and first interrogatories, due to those Defendants' unexcused and unexplained failure to timely serve responses. ECF 140, at 5-6 (and boilerplate objections). Relator made it clear he meant to hold Defendants

to the Magistrate Judge's order and asked them to generate a timeline as to when all materials would be produced pursuant to the Compel Order. Bothwell Decl. at ¶ 13. Defendants have consistently refused to provide a timeline or to produce the materials ordered by the Court and did not produce a single document after the Order was entered. Bothwell Decl. at ¶ 13. Defendants stated they would either file a motion for reconsideration of the Order or file a motion for this Court to review the Order. Bothwell Decl. at ¶ 14. Such a motion would have been due by the 15th of February. In lieu of complying with the Magistrate Judge's Order or requesting a stay from the Magistrate Judge of the Order while requesting reconsideration or review, Defendants filed the *ex parte* application to file under seal (and declaration attaching a request for a stay), which is, by all appearances, an attempt to excuse Defendants from discovery obligations in this matter indefinitely.

## IV. Defendants are Delaying because They are Losing and Relator Should be Allowed to Prove His Case Without Further Delay

Shirking discovery obligations is not the only reason Defendants seek to delay. The evidence Relator already has against Defendants is so strong that Realtor is contemplating an affirmative motion for summary judgment. Defendants know this, and so all they can do is delay. This Court has already taken note of the myriad guidance documents which require the Mohs surgeon to complete **both** the excision and histological examination and sided with Relator on this issue. *See* ECF 54, at 11-12 (taking note of Noridian Local Coverage Determination (LCD) and Article as well as CMS guidance). Relator has since found additional materials dating back to ate least the early 2000s supporting this interpretation and has the support of several professional dermatology organizations. *See* ECF 115 (FAC), at ¶ 97; Ex. A (CPT Codebook); Ex. B (AAPC Article on Mohs requirements). Defendants have admitted they do indeed use a separate doctor to read the Mohs slides and that they then bill this procedure as Mohs. *See* Ex. C (RFAs). As to scienter, Relator's allegations are damning. Relator has added a plethora of allegations based on evidence showing

Defendants knew or should have known they were billing Mohs improperly, including multiple warnings from their own billing company (who they lied to about the pathologist's role). *See, e.g.,* FAC, at ¶¶ 67-68, 69, 73- 82, 95-97, 99-108, 110, 130, 208-212. Dr. Mudge, himself, went to at least four seminars where they said what he was doing was Medicare Fraud. *Id.* at ¶ 97. The Court already noted that causation was "easily met." ECF 54, at 13. The Court has also found this allegation material, noting "[t]aken as true, the Mohs CPT codes affects the payment amount Defendants receive from Medicare." *Id.* at 13. The Court also supported Relator's kickback theory, which has only been strengthened by other materials making it explicitly clear that this was a kickback arrangement. *See* ECF 54, at 13-14; Ex. D (Email regarding exchanging lower frozen excision ). Perhaps most damning is their co-conspirator and kickback recipient's confession under oath to the kickback scheme. Ex. E (Dr. M decl.).

## V.   Defendants Do Not Meet the Requirements for an *Ex Parte* Motion

"[T]his Court allows ex parte applications solely for extraordinary relief." ECF 17, at 8. This Court regularly denies *ex parte* motions where movants fail to show why a normal briefing schedule cannot be accommodated. *See Zuehlsdorf v. FCA US L.L.C.*, 2023 U.S. Dist. LEXIS 190392, at *3 (C.D. Cal. Sept. 26, 2023) (Bernal, J.). *Ex parte* relief is warranted *only* if the movant (1) will suffer "irreparable prejudice if the underlying motion is not heard according to the regular noticed motion procedures" and (2) was "without fault in creating the crisis that requires *ex parte* relief or that the crisis occurred as a result of excusable neglect." *Id.* (cleaned up).

Defendants fail both prongs of this standard. There is no reason, and Defendants have shown no reason, why a normal briefing schedule cannot be accommodated. Defendants have been granted a cumulative **125 days** of stay since April 2023 across two stay stipulations granted by the Court. *See* ECF 88 (50 days), ECF 130 (75 day stay). Defendants negotiated these stays under much the same pretenses that they do here, each time promising they would work in good faith to

settle and lamenting their lack of funds, and each time doing nothing for the duration of the stay. The pattern was remarkable. Whenever they were on the verge of having to do something, Defendants would approach Relator for a stay, make all sorts of promises about how they wanted to work out a settlement and negotiate in good faith, but needed a stay because their client was "on the verge of bankruptcy." Bothwell Decl., at ¶ 15. Eventually, Relator realized these stays were pointless, and refused Defendants' pleas to enter another stay shortly after the last stay expired. *Id.* at ¶ 16, ECF 130 (stay ending January 8, 2024). If this is an emergency, it is an emergency that has been going on for nearly a year. Defendants do not show why *this* time is different or why *this* time is an *actual* emergency when Defendants have been on "the verge of bankruptcy" since April of last year. Defendants do not show why this was not an emergency when the party's agreed to an extension of deadlines just a few weeks ago.[5] *See* ECF 139. Litigation being expensive is not an emergency. Relator giving reasonable settlement offers and refusing to accept bargain-basement offers is not an emergency. Umhofer Decl., at ¶ 6-7. Relator saying he will go to the court in light of counsel's threat not to produce their deponent for a properly noticed deposition is not an emergency. Umhofer Decl., at ¶ 6; Bothwell Decl., at ¶ 17. Relator using common-sense phrases like "litigation is expensive" is not an emergency. Umhofer Decl., at ¶ 7. Relator informing opposing counsel he will have to notice depositions if there is not an agreement to extend deadlines because they have to be done before the then current deadline is not an emergency.[6] *See* Umhofer Decl., at ¶ 7; Bothwell Decl., at ¶ 18, ECF 139, at 1 (noting cutoff date of April 22, 2024). Relator propounding discovery and then moving the Court to enforce that discovery is not an

---

[5] Since this extension was not calculated with the stay in mind, the deadlines would need to be extended again should it remain.

[6] The party's noted in the last joint stipulation for extension of deadlines that they did not believe they could complete discovery by the then April 22, 2024 deadline. *See* ECF 139, at 3. Defendants should not be surprised that Relator would want to quickly take depositions if these deadlines were in fact not moved.

emergency. That is the litigation process. Defendants have not met the first prong.

Even if Defendants had met the first prong, they have not met the second. Defendants' "emergency" is entirely of their own making. Defendants did virtually nothing during the over *four-month* moratorium, despite Relator's best attempts to spur them into action, to move the case closer to settlement. Finally, when Defendants approached Relator for yet another stay, he refused, noting the failure of Defendants to negotiate settlement in good faith despite the case being stayed, consensually, for *over four months* in the last year**.** *Id.* Now, facing down a Motion to Compel Order waiving all objections to Relator's first discovery requests, instituted due to *Defendants' own discovery abuses*,[7] Defendants are faced with the untenable reality that they might actually have to fully answer the discovery requests Relator propounded in **October of 2022**. *See* ECF 140, at 2, 6. And another Motion to Compel may be in the hopper given Defendants' failure to respond to Relator's last discovery requests beyond boilerplate objections. *See* Bothwell Decl. at ¶¶ 9, 12. Tellingly, Defendants proposed the last stay as soon as Relator pushed them to respond to these requests. *Id.* at ¶ 16. Even worse, Defendants might actually have to participate in the litigation, something they have avoided for nearly half of the last year. Relator might even notice depositions and propound discovery. If this is an emergency, Defendants are the ones that caused it. Relator gave them over *four months* to work with him on settlement, and they refused to put the work in. Defendants refused to put the work in on discovery, too, and are paying the price for it. Litigation is expensive, but what makes it *really* expensive is when a party refuses to participate meaningfully in either settlement discussions or discovery. That is exactly what Defendants have done here.[8]

---

[7] These are not vaguely alleged "discovery abuses" (Umhofer Decl. at ¶ 4) but have already been acknowledged and punished by the Court. *See* ECF 140.

[8] The argument cannot be made in a vacuum. Parties are entitled to justice and vindication and the system is set up to achieve that result. Indeed, courts function on the adage "justice delayed is justice denied." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095-96 (9th Cir. 2021); FRCP 1.

They may blame Relator for demanding Defendants participate in litigation, but Defendants' counsel have done their client a disservice by refusing to engage in legitimate settlement discussions and refusing to properly prepare their client for the realities of settlement and the alternative to settlement: litigation, trial, and judgement. If anyone is unnecessarily draining Defendants' coffers, it is their own counsel.[9]

## VI.   Defendants Do Not Meet the Requirements for a Stay

A court's power to "stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936). In determining whether to grant a stay request, the Court must weigh "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). These competing interests include (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-35 (2009). When weighing the parties' competing interests, "if there is even a fair possibility that the stay for which [the movant] prays will work damage to someone else," then the movant "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. Defendants make no attempt to assess these factors—because they weigh against granting their request.

Defendants have perpetually sought to draw this case out and put off discovery,

_____

[9] There is actually no proof that there are economic issues at play.  A quick review of Defendants' payroll shows that they are paying at least several of their employees three times or more the regional average.  One should take their plaints with a large grain of salt.

by refusing to cooperate. *See supra.* The parties' (ultimately unsuccessful) attempts to settle the case have not led to resolution. No more delays or stays are warranted. The Court should terminate the stay.

### a. Further Delay Would Prejudice Relator

Here, there is more than a "fair possibility" that the 90-day stay would prejudice Relator. First, it is axiomatic that "[a]ny motion that risks delaying the course of litigation also carries a risk of prejudicing the nonmoving party." *In re Pandora Media, L.L.C. Copyright Litig.*, 2023 U.S. Dist. LEXIS 54078, at *5-6 (C.D. Cal. Jan. 31, 2023). That is because "[d]elay 'inherently increases the risk that witness' memories will fade and evidence will become stale.'" *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007); *see, e.g., Lincoln Gen. Ins. Co. v. Ryan Mercaldo LLP*, 2015 U.S. Dist. LEXIS 191792, *7 (S.D. Cal. Sept. 14, 2015) (concluding that the defendant demonstrated a fair possibility of prejudice where "evidence could be lost and relevant witnesses could become unavailable" and delay "would increase the risk that other witness[es'] memories will fade"); *Johnson v. Starbucks Corp.*, 2020 U.S. Dist. LEXIS 74695, at *6 (E.D. Cal. Apr. 27, 2020) ("[A] stay would likely damage and prejudice Starbucks by unnecessarily delaying resolution of these proceedings."). Indeed, Defendants have asserted that some critical evidence in this case, such as claims data from before 2017, and ESI from before 2014, is already not reasonably accessible due to the passage of time. *See* ECF 100, at 3-4 (summarizing Defendants' position that they would not obtain, review or produce any medical records from before 2017, or any ESI from before 2014).

Just a couple weeks after the end of the most recent stay on January 8, 2024, Defendants seek to leverage the Magistrate Judge's Order granting Relator's motion to compel as a basis to *further avoid* discovery—when they should take the Magistrate Judge's Order as impetus to cease foot-dragging and fully participate. Additional delay would prejudice Relator.

### b.  Defendants Fail to Make Out a Case of Hardship or Inequity

Defendants must make out a "clear case of hardship or inequity" to justify a stay—and they have not done so. "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112; *see also Castaneda v. United States*, 2008 U.S. Dist. LEXIS 40567, at *4 (C.D. Cal. May 20, 2008) ("The Court acknowledges that discovery can be burdensome. However, such a burden, while regrettable, does not constitute an irreparable injury."); *Consumer Fin. Prot. Bureau v. D & D Mktg., Inc.*, 2017 U.S. Dist. LEXIS 221039, at *19 (C.D. Cal. Mar. 21, 2017) (noting that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury") (quoting *Renegotiation Bd. v. Bannercraft Clothing Co*., 415 U.S. 1, 24 (1974)); *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.").

The only basis Defendants have offered for a stay is that they have requested that the DOJ intervene and settle the case on terms favorable to Defendants. *See* ECF 143-1 at 6. As discussed above, the DOJ attorneys assigned to this case are not open to those discussions. *See* Bothwell Decl. at ¶¶ 6-7. Defendants speculate and hope that the Government *could* re-investigate the case, that the Government *could* reconsider whether to intervene, and that the Government *could* ultimately reach a settlement agreement with Defendants. *See* ECF 143-1 at 2, 6. Notably, the Government has not moved to intervene in the case. And the Government expressed its actual position— that while the U.S. is the real party in interest, it "is not a litigant" and "it is our position that it should be the responsibility of the parties to litigate and potentially resolve the action."[10] *See* Umhofer Decl. at ¶ 9, Bothwell Decl. at ¶¶ 6-7, 19.

---

[10] Which makes perfect sense. At the present time, because the Government has chosen not to intervene, "it is (by definition) not a party. And non-parties typically cannot do much of anything in a lawsuit." *United States ex rel. Polansky v. Exec.*

### c. Orderly Course of Justice Requires Proceeding with Discovery

The orderly course of justice is not consistent with granting Defendants' request for a stay. "The orderly course of justice" is "measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110. No issues would be simplified or addressed by another delay; Defendants merely express the hope that the Government could re-investigate the case, intervene, and reach an agreement with Defendants to settle the case on favorable terms sometime in the next 90 days. Without support or differentiation from any other FCA case, Defendants represent that they have expended considerable resources defending this litigation. But the path forward is to cooperate in discovery—not litigating efforts to avoid it.

## VII. The Court Should Disregard Defendants' Improper References to Confidential Mediation Communications

The Court should disregard those portions of Defendants' motion that characterize or otherwise improperly refer to confidential mediation communications with Relator's counsel. The purpose of mediation confidentiality requirements is to encourage free communication between the parties, without concern that such communications will later be used against them. *See, e.g., Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1175 (C.D. Cal. 1998) (recognizing protected status of communications made in course of mediation and noting widespread recognition of the same); *Ironhawk Techs. v. Dropbox, Inc.*, No. CV 18-01481-DDP (JEMx), 2019 U.S. Dist. LEXIS 239445, at *4 (C.D. Cal. Mar. 20, 2019) ("Judicial policy favors settlements and confidentiality promotes settlement."); *see also* Fed. R. Evid. 408 advisory committee's note (policy of rule excluding settlement discussions from evidence is to encourage "freedom of communication with respect to compromise" by preventing the presentation of either

---

*Health Res., Inc.*, 599 U.S. 419, 143 S. Ct. 1720, 1730 (2023) (holding that the Government must intervene in an FCA case to dismiss it).

party's statements made during negotiations); C.D. Cal. L.R. 16-15.8 (a) (prohibiting parties in mediations conducted by the Court's Mediation Panel from disclosing "anything that happened or was said relating to the subject matter of the case in mediation," including to "the assigned judges" in the case). But that is exactly what Defendants seek to do here—violate their duty of confidentiality and, in motion practice before the Court, suggest that it should draw some sort of inference against Relator based on its vague characterizations of unidentified statements of Relator's counsel during mediation. ECF 143-1 at 6. The Court should not take Defendants' improper characterizations of confidential communications into account in determining any aspect of Defendants' motion. *See Karubian v. Kaiser Ventures, L.L.C.*, 2018 U.S. Dist. LEXIS 235252, at *11 (C.D. Cal. Oct. 17, 2018) (finding that "emails and draft documents [that] were exchanged in the course of or pursuant to the mediation . . . should be precluded from being considered in any proceeding before this Court[,]" because "[c]onfidentiality is an important feature of mediations and other alternative dispute resolution processes" and must be protected); *In re Glob. Equity Mgmt. (SA) Pty. Ltd.*, 2020 U.S. Dist. LEXIS 148130, at *7 (N.D. Cal. Aug. 15, 2020) (scolding defendants for improperly introducing mediation discussions into motion for fees).

## VIII. Conclusion

Defendants have misrepresented their reasons for the stay, including imagined "settlement negotiations" with the Government, who has stated it wishes the parties to conduct settlement amongst themselves.  Furthermore, Defendants do not show why an *ex parte* application is warranted, nor do they show why they are entitled to a stay despite the prejudice such a stay would cause Relator.  Defendants are not in settlement talks with the Government and do not want to work with Relator (as they themselves admit in their *ex parte* application).  Defendants merely want another 3 months (on top of four months of stay already granted) reprieve from discovery obligations.  This is not a valid basis for a stay.

1       Respectfully submitted this 19th day of February 2024.

2

3                           /s/  *Mike Bothwell*

                        Mike Bothwell

4                           GA Bar No. 069920

                        Mike@WhistleblowerLaw.com

5                           Attorney for Relator

6   **BOTHWELL**

7   LAW GROUP

304 Macy Drive

8   Roswell, Georgia 30076

Ph: 770-643-1606

9   Fax: 770-643-1442

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28